433 So.2d 278 (1983)
Mavis ORGERON and Myrtle Orgeron
v.
LOOP, INC. and Reading and Bates Construction Company, Inc.
No. 82 CA 0698.
Court of Appeal of Louisiana, First Circuit.
May 17, 1983.
Rehearing Denied June 29, 1983.
Stanley L. Perry, Galliano, for plaintiffs-appellants Mavis Orgeron and Myrtle Orgeron.
Mack E. Barham, New Orleans, for defendant-appellee Loop, Inc.
Lawrence J. Centola, Jr., New Orleans, for defendant-appellee Reading & Bates Const. Co., Inc.
Before LOTTINGER, COLE and CARTER, JJ.
*279 COLE, Judge.
The issues in this appeal are whether or not the court erred in concluding a document entitled "Receipt and Release" rendered a subsequent claim res judicata and whether or not the court erred in failing to recognize a separate cause of action relating to a stipulation pour autrui.
The facts are as follows. Loop, Inc. is licensed by certain federal and state agencies to construct a deepwater port off the Louisiana coast. Pursuant to these licenses, Loop is authorized to expropriate property when needed for the installation of onshore pipelines. Loop filed such an expropriation suit against landowners Mavis and Myrtle Orgeron but prior to trial the parties reached an agreement concerning the servitude.
On December 18, 1978, the parties signed the right-of-way agreement which is the subject of the present lawsuit. The agreement recites a consideration of only $10.00 but the evidence shows the actual consideration paid was $2,439.00. On the same date the Orgerons voluntarily executed a second document entitled "Receipt and Release" which reads as follows:
"The undersigned GRANTOR or Tenant (whether one or more) of a certain Right-of-Way Agreement dated the 18th day of December, 1978, to LOOP INC., GRANTEE, does hereby declare and agree that the sum of Three Thousand Five Hundred Sixty One Dollars ($3561.00), the receipt of which is hereby acknowledged, constitutes full payment and settlement under said Agreement for all damages to growing crops, timber, land, fences and fixtures on said premises and any and all other damages not herein specifically described, caused or to be caused by the construction of pipelines and their appurtenances under said Right-of-Way Agreement, and GRANTEE and its Contractors, Sub-contractors and Employees are hereby released from all claims of the undersigned for said damages." (Emphasis added.)
There is no question that the Orgerons signed the release and received the stipulated $3,561.00 in consideration. However, in May of 1981 the Orgerons filed suit against Loop and its contractor, Reading and Bates Construction Co., alleging defendants had failed to fill a ditch after laying the pipe.
Defendants responded with various exceptions, the pertinent one being the peremptory exception raising the objection of res judicata. After hearing arguments, the trial court sustained the exception and dismissed the suit, noting the language of the release was clear and unambiguous in that the Orgerons had released Loop and the contractor for any damage to the land and for all other damages not specifically described. The Orgerons then filed this appeal.
Appellants' first argument is the court erred in maintaining the objection of res judicata. Before we can address this issue we must first examine a factual dispute. In brief, appellants contend Loop failed to bury the pipelines as obligated in the agreement. Indeed, Loop does expressly contract in the right-of-way agreement, "... to bury all pipelines laid hereunder which are not laid in ditches or canals so that they will not interfere with the ordinary cultivation of the said above-described lands...." Therefore, appellants contend in spite of the "receipt and release" agreement Loop had a specific obligation to bury the pipeline.
At a trial on the objection of res judicata, evidence may be introduced. La. Code Civ.P. art. 931; Hancock v. Lincoln American Life Insurance Co., 278 So.2d 561 (La.App. 1st Cir.1973), writ denied, 281 So.2d 754 (La.1973). The record before us contains only the documentary evidence above noted, no other evidence having been presented. However, the court's written reasons reflect the trial judge viewed personally the property in question to ascertain the nature of the damage.[1] We quote from the written reasons for judgment.

*280 "In an effort to understand the problem as presented in the arguments of counsel on the trial of the exception, the Court elected to view the `damaged' area, and viewed and visited the site both from the air and on the ground. The area is in the southern part of Lafourche Parish and is normally very low land, but appeared adequate for pasturage for which it was used. The `damage' was very apparentthe settling of the earth on the pipeline after it had been installed at an unusually low depth. This settling has resulted in a water filled depression which appeared to be approximately 60' wide by a depth of 3' or 4' across plaintiffs' property."
These reasons show the court concluded the damage did not occur from the failure to bury the pipe, but from the settling of the earth above the pipeline after the pipe had been buried at an unusually low depth. Without any contradictory evidence before us, we will not disturb the trial court's factual conclusion.
The trial court examined the receipt and release agreement and noted that it clearly stated the sum of $3,561.00 was full payment for "... all damages to ... land... and all other damages not herein specifically described, caused ... by the construction of the pipelines ... under said Right of Way Agreement." We agree with the court the resultant settling of the earth was indeed damage to the land and therefore explicitly covered by the agreement.
There is no question but that a compromise (such as the receipt and release agreement here) has a force equal to the authority of the thing adjudged. La.Civ. Code art. 3078. Further, the objection of res judicata is the proper method of raising a compromise as a bar to a subsequent lawsuit. Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1st Cir.1981).
Civil Code article 2286 forms the basis for the objection of res judicata and reads as follows:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
Although the trial court did not address specifically each element of res judicata, it apparently found the essential elements here existed.
The thing demanded in the compromise and the lawsuit are indeed the same: money damages. As to the cause of action element, it has been noted by the Louisiana Supreme Court that "cause of action" is a mistranslation and should simply read "cause." In order to ascertain the meaning of the word cause, civilian doctrine should be examined. Mitchell v. Bertolla, 340 So.2d 287 (La.1976), rehearing denied, 1976; Ditch, supra.
In Planiol's Civil Law Treatise (Traité élémentaire de droit civil), he defines cause as "the juridical or material fact which is the basis of the right claimed, or the defense pleaded." 2 Planiol Civil Law Treatise, pt. 1, no. 54A(6) at 38 (11th ed. La.St.L. Inst. transl. 1959). Using Planiol's definition, we conclude the "cause" giving rise to this demand is tortious damage to property. The compromise was entered into as a settlement of any potential claim for property damage. The suit was filed seeking an award for property damage.
There is really no controversy concerning the identity of parties and the fact that the demand is "formed by them against each other in the same quality." The compromise was entered into by the Orgerons and Loop. Loop also acted on behalf of "Contractor, Sub-contractors and Employees." The lawsuit is by the Orgerons against Loop and its contractor.
Appellants offer several arguments as to why it was error for the court to sustain the objection, but all are based upon the *281 premise that Loop failed to bury the pipeline as agreed. Because we accept the trial court's determination that the pipeline was in fact buried, but that because of its unusual depth the land above it settled (sunk) and caused the depression in question, we need not address these arguments.
Appellants' other argument is the court erred in failing to consider a second cause of action which they alleged in their petition. Petitioners argue that by failing to bury the pipeline the defendants violated the terms of various permits issued them by certain regulatory agencies. (They characterize themselves as beneficiaries of a stipulation pour autrui.) Again, we need not address this cause of action because we accept the trial court's conclusion the pipeline was in fact buried.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] At trial, counsel for the parties either stipulated to or acquiesced in the trial judge observing the property. In argument, counsel for appellants complains only of the trial judge's characterization of what he saw as "damages," stating he does not object to his having visited the site and making factual determinations therefrom.