508 So.2d 616 (1987)
Andrew O'Brian HARMON, Plaintiff-Appellant,
v.
Marjorie Padula HARMON, Defendant-Appellee.
No. 18718-CA.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1987.
Rehearing Denied July 9, 1987.
*617 Susan D. Scott, Shreveport, for plaintiff-appellant.
Thompson & Harp by Robert I. Thompson, III, Shreveport, for defendant-appellee.
Before HALL, C.J., and MARVIN and LINDSAY, JJ.
LINDSAY, Judge.
Plaintiff-appellant and defendant-appellee were formerly husband and wife. On June 9, 1986, plaintiff-appellant filed suit to set aside a community property partition agreement due to lesion. This petition was met with an exception of res judicata filed by defendant-appellee on June 30, 1986. On July 26, 1986, the trial court signed a judgment sustaining the exception of res judicata. Plaintiff-appellant filed this appeal. For the following reasons, we reverse the decision of the trial court and remand for further proceedings.
This case involves an extension of the issues presented and decided by this court in Gates v. Gates, 485 So.2d 114 (La.App. 2d Cir.1986). We must now determine whether a community property settlement agreement which specifically states that it is a "transaction and compromise" and is governed by LSA-C.C. Arts. 3071 et seq., regardless of the true facts and nature of the act, bars an action for rescission on account of lesion. Likewise, we are asked to determine whether such an agreement purporting to bar an action for lesion would be contrary to the public policy of this state.
*618 The record reveals that plaintiff and defendant were granted a legal separation on May 5, 1982. On October 25, 1982, plaintiff and defendant signed a document styled "Partition of Community of Acquets and Gains and Settlement of Claims of Separate and Paraphernal Estates." This agreement was drafted and prepared by the attorney for the defendant. In the community property settlement agreement the parties conveyed to each other their respective interests in various items of community property, and Mrs. Harmon assumed the indebtedness on the former matrimonial domicile.
The agreement also contained the following language which forms the basis for this appeal:
Both of the parties hereto do hereby assert that this partition constitutes a transaction and compromise of their respective claims, rights and obligations under the provision of Articles 3071 et seq. of the Louisiana Civil Code as amended.
Plaintiff filed suit seeking to have this community property partition settlement set aside on grounds of lesion. The defendant filed an exception of res judicata. No evidence was taken on the exception. The trial court sustained the exception of res judicata and dismissed the suit. Although the trial court did not render written reasons for judgment, both parties in brief to this court agree that the trial court held that the parties had chosen the law by which they wished to be governed, as permitted by LSA-C.C. Art. 11. The trial court further held that by signing the partition agreement containing the statement that the agreement constituted a transaction and compromise under the provisions of LSA-C.C. Arts. 3071 et seq., the parties bound themselves to be governed by those articles. Therefore, the community property settlement was indeed a transaction and compromise and was not subject to be set aside for lesion.
Plaintiff contends that the agreement is a community property partition agreement and subject to lesion as set forth in LSA-C.C. Art. 1965 (formerly Article 1861) and LSA-C.C. Arts. 1397 and 1398. Moreover, plaintiff contends that public policy forbids property partitions from being clothed in the form of a transaction, compromise or settlement in order to avoid the issue of lesion. Joy v. Joy, 379 So.2d 816 (La.App. 4th Cir.1980); Gates v. Gates, supra.
Defendant relies upon LSA-C.C. Art. 3078 and LSA-C.C. Art. 11. Defendant contends that the issue presented to this court is res nova because in Gates, supra, the settlement agreement there considered did not contain specific language identifying the agreement as a "transaction and compromise" or specifically stating that the rights and obligations of the parties were to be governed by the provisions of LSA-C.C. Arts. 3071 et seq. The defendant contends that the trial court was correct in holding that the parties in this case had the right to contract in this manner under the provisions of LSA-C.C. Art. 11 and that there are no public policy reasons to prevent the parties from waiving their rights to attack the agreement on grounds of lesion.
The basis of the right to demand a partition is found in LSA-C.C. Art. 1289, which provides:
No one can be compelled to hold property with another, unless the contrary has been agreed upon; anyone has a right to demand the division of a thing held in common, by the action of partition.
In order to avoid an action for a judicial partition, co-owners may agree to a voluntary and binding act of partition whereby their property is divided. Even though a voluntary partition agreement may be entered into, nevertheless, a party may rescind that agreement on grounds of lesion as specifically authorized by LSA-C.C. Arts. 1397, 1398 and 1965.[1]
In those instances in which a transaction or compromise occurs, as defined by LSA-C.C. Art. 3071 et seq., the agreement cannot be set aside on the grounds of lesion. Transaction or compromise is defined *619 by LSA-C.C. Art. 3071 in pertinent part as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner in which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
It is well-settled that a compromise may have a force equal to the authority of "things adjudged" and the exception of res judicata is a proper method of raising a compromise as a bar to a subsequent lawsuit. See LSA-C.C. Art. 3078; Gates, supra, and cases cited therein.
As just mentioned, a transaction or compromise cannot be set aside for lesion. LSA-C.C. Art. 3078, provides:
Transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
Defendant-appellee admits that in both Gates, supra and Joy, supra, the courts held that the action of lesion was applicable to partition agreements which contained language indicating that the parties considered the partition to also be a compromise. For instance, the settlement agreement in Gates contained the following provisions:
Each party acknowledged that he and she has received in the said partition of property, property equal in value to that conveyed herein in the agreement of each party being entered into in and for the consideration of settling the dispute existing between the parties hereto with reference to the partition and liquidation of said community property, and to avoid the uncertainty and expense of litigation with reference thereto.
As a result hereof, the parties hereto discharge each other from any further accounting to the community which formerly existed between them; it being fully liquidated, compromised and settled as above set forth. This instrument and agreement is executed in full and complete settlement of all claims either party hereto may have against the other, whether the community against the separate estate of either party or whether the separate estate of either party against the community or whether the separate estate of either party against the separate estate of either party. This instrument is a complete and final settlement of all claims.
In Gates, we held that the above quoted language clearly established that the parties entered into a community property partition agreement and that it was not a transaction or compromise as defined by LSA-C.C. Art. 3071 and therefore the partition agreement was subject to rescission on the basis of lesion. We relied upon Joy v. Joy, supra, and the cases cited therein.
Here, the majority of the settlement language in the community property settlement agreement and the language contained in the agreement in Gates are very similar. However, as the defendant points out, the language in the instant settlement contract is more specific than the language in Gates because it makes specific reference to LSA-C.C. Art. 3071 et seq. and states that the partition constitutes a transaction and compromise of each party's respective claims.
It is true that the language contained in the instant agreement is more specific than that contained in the agreement in Gates. However, although the settlement agreement entered into here defines itself as a transaction and compromise, it is evident that the primary purpose of the document was to partition the community property. The record does not indicate that there was any dispute whatsoever between the parties as to the nature, character or existence of the community property to be partitioned. In the instant case, just as in Gates, the contract is nothing more than a nonjudicial partition between co-owners.
In Gates, supra, we stated that we concured with Joy, supra, and that if we should hold that the partition agreement entered into by the parties constituted a *620 transaction or compromise and that plaintiff was precluded from attacking the partition on the grounds of lesion, then we might be compelled to hold that every partition agreement, even those not related to community property, must be regarded as a transaction or compromise entered into for the purpose of preventing a partition suit, and as such free from attack. Such a holding would render LSA-C.C. Arts. 1397, 1398 and 1965 without effect. Therefore, we held that even though a partition may have the qualities of a transaction or compromise, it may nevertheless be attacked for lesion.
Defendant argues that even if the contract in question is simply a partition and not actually a transaction or compromise, the parties should be allowed to "choose their own law" and waive their right to attack the agreement on grounds of lesion. The question is, by incorporating into the agreement reference to LSA-C.C. Arts. 3071 et seq., and particularly LSA-C.C. Art. 3078, did the parties thereby waive their right to attack the partition agreement as lesionary as they would otherwise be entitled to do under LSA-C.C. Art. 1397, 1398 and 1965 and our interpretation of those articles in Gates, supra. We think not, certainly not in a case such as this where the agreement at issue is nothing other than a partition, although a partition which is made to look like a transaction and compromise.
The defendant argues, and the trial court held, that Article 11 of the Louisiana Civil Code allows a party to choose the law which will govern his covenants and to renounce what the law has established in his favor. LSA-C.C. Art. 11 provides:
Individuals cannot by their conventions, derogate from the force of laws made for the preservation of public order or good morals.
But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not effect the rights of others, and is not contrary to the public good.
We hold that the right to attack a community property settlement on grounds of lesion is one of the rights established by law which a party may not waive. Title 4 of the Civil Code is entitled "Conventional Obligations or Contracts." The fourth chapter of that Title concerns vices of consent. This chapter is divided into four sections, each section dealing with a different type of vice. The four types of vice are: error, fraud, duress and lesion. As a vice of consent, lesion cannot be waived because lesion destroys consent and without consent there is no contract.
As to defendant's argument that LSA-C.C. Art. 11 allows the parties to choose their own law, the Louisiana Supreme Court in E.L. Burns Company, Inc. v. Cashio, 302 So.2d 297 (La.1974) stated:
Article 11 of the Civil Code does state that individuals may renounce whatever advantages the law may have established in their favor; however, this is an exception to the general rule contained therein that, where a law is directed to the preservation of public order or good morals, the rule thus established may not be derogated from by private agreement. Reading further, Article 12 more specifically states an example of rules founded on public order in its terse decree that "whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed." LSA-C.C. Art. 12 (1970).
Statutory rules may be either imperative or suppletive. Rooted in public policy considerations, an imperative rule is applied without regard to the intention of the individuals concerned. A prohibitory law, as mentioned in Article 12, is one that is cast in the imperative form, but exhibits a negative, rather than positive, command. Examples of imperative rules include Article 2589 (rescission of sales of immovables for lesion beyond moiety)....
While LSA-C.C. Art. 2589 (lesion beyond moiety) is more specific than LSA-C.C. Art. 1398 (lesion beyond one fourth) in that it specifically states that the seller has the right to demand the rescission of the *621 sale, even in case he had expressly abandoned the right of claiming such rescission, we perceive no distinction between the two articles as to the purpose or theory behind them. Both articles enforce the same public policy, that is, to ensure that equality is achieved (LSA-C.C. Art. 1398), that each party receives a full equivalent for what he gives in a commutative contract (former LSA-C.C. Art. 1860 (1870)) and that the performance of the obligation by each party is correlative or equal to the performance of the other (LSA-C.C. Art. 1965 and 1911). These principles basically relate to fair and equal treatment of each contracting party. Thus, lesion has particular importance in community property settlement contracts which are not truly "transactions or compromises," because a community property settlement begins with the assumption that each party owns an equivalent share of the community. Furthermore, the assets of the community and their value should be known by the spouses, or discoverable by them. Thus, when lesion does exist in a community property settlement, it must be the result of an error or other vice of consent. One party should not be allowed to take advantage of the extreme range of emotions which may affect the other party's judgment following a separation or divorce. The right to attack the contract due to lesion provides the necessary protection.
Therefore, we conclude that a party to a community property partition under the circumstances presented here may not waive his right to claim that the partition is null due to lesion, even though the agreement is designed to look like a transaction or compromise. Accordingly, the judgment of the trial court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] This article summarizes the content of former LSA-C.C. Art. 1860, 1861 and 1863 (1870).